UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| THOMAS DAGGETT,<br><br>              Plaintiff,<br><br>     vs.<br><br>YORK COUNTY, et al.,<br><br>              Defendants | Civil No. 18-00303-JAW |

### COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, WITH INCORPORATED MEMORANDUM OF LAW

    Plaintiff Thomas Daggett had no contact with Defendants William King and Michael Vitiello during his stay at the York County Jail in May of 2015. Moreover, Mr. Daggett does not allege facts that would support deliberate indifference on the part of Sheriff King, Jail Superintendent Vitiello, or Defendant York County. Finally, Mr. Daggett's civil conspiracy claim lacks an underlying tort, is time barred, and is barred by immunity. For these reasons, which are discussed more completely below, York County, Sheriff King, and Superintendent Vitiello (collectively "the County Defendants") move for summary judgment on all claims in Mr. Daggett's Amended Complaint pursuant to Federal Rule of Civil Procedure 56 and Local Rules 7 and 56.

### BACKGROUND

**I.   FACTS PERTINENT TO CLAIMS AGAINST COUNTY DEFENDANTS**

    The claims against the County Defendants arise out of Mr. Daggett's incarceration at the York County jail from about 11:00 p.m. on May 17, 2015 to early afternoon the following day. (ECF No. 48-10, at 513 (Poore Dep. at 43/14-18); ECF No. 48-27, at 708 & 712 (Male Adult Booking form for Mr. Daggett)). The full factual background for the Motion for Summary Judgment is set forth in the accompanying Statement of Material Facts, which is hereby incorporated by reference.

## II. PROCEDURAL BACKGROUND

Mr. Daggett initiated this lawsuit by a Complaint filed on August 8, 2018. The current operative pleading is his Amended Complaint, which was filed on September 25, 2018. Mr. Daggett asserts the following claims against the County Defendants: violation of 42 U.S.C. § 1985 (Count I); violation of 42 U.S.C. § 1983 by William King (Count VI); violation of 42 U.S.C. § 1983 by York County (Count VII); violation of the Maine Civil Rights Act, 5 M.R.S. § 4682 ("MCRA") (Count VIII); and civil conspiracy (Count IX). Although the Amended Complaint refers to "John Does" who are purportedly employees of the Jail, Mr. Daggett has never identified these alleged individuals or joined them as parties.

## III. STANDARD OF REVIEW

Summary judgment is designed to "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990). A party is entitled to summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions of file, together with the affidavits, if any, show there is no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The moving party must "aver[] 'an absence of evidence to support a nonmoving party's case.'" *Garside*, 895 F.2d at 48 (quoting *Celotex v. Catrett*, 477 U.S. 317, 325 (1986)). The nonmovant is then required to present competent evidence to "establish the existence of at least one fact issue which is both 'genuine' and 'material.'" *Id.* (citations omitted). "A 'genuine' issue is one 'that properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). "A 'material' issue is one that 'affects the outcome of the suit,' that is, an issue which, perforce, 'needs to be resolved before the related legal issues can be decided.'" *Id.* (quoting *Anderson*, 477 U.S. at 248, and *Mack v. Great Atlantic and Pacific Tea Co.*, 871 F.2d 179, 181 (1st Cir. 1989)).

The United States Supreme Court has held that on issues in which the nonmovant bears the ultimate burden of proof, that party must present definite, competent evidence to rebut the motion. *Anderson*, 477 U.S. at 256-57. The nonmovant's evidence "can not be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a fact finder must resolve at an ensuing trial." *Mack*, 871 F.2d at 181. "[S]ummary judgment cannot be defeated by relying on improbable inferences, conclusory allegations, or rank speculation." *Ingram* v. *Brink's, Inc.*, 414 F.3d 222, 228-29 (1st Cir. 2005).

## ARGUMENT

As noted above, Mr. Daggett has asserted claims against the County Defendants under both federal and state law. The federal claims include: claims under Section 1983 for alleged violations of Mr. Daggett's federal constitutional rights by Sheriff King and the County only; and a claim under Section 1985 for alleged conspiracy to violate Mr. Daggett's federal constitutional rights. The state law claims include: an alleged violation of the MCRA; and civil conspiracy. Based on the factual record in this case, none of these claims are legally viable. In any event, Sheriff King and Superintendent Vitiello are protected from liability for any alleged civil rights violations by qualified immunity and all of the County Defendants are protected by immunity with regard to the civil conspiracy claim.

### I. THE RECORD EVIDENCE DOES NOT SUPPORT CIVIL RIGHTS CLAIMS AGAINST THE COUNTY DEFENDANTS.

Pursuant to Section 1983, a claim for relief may be asserted only against those persons who, "under color of law," act to deprive another of "rights, privileges, or immunities" secured by either the United States Constitution or federal statutes. § 1983; *see Board of County Comm'rs v. Brown*, 520 U.S. 397, 402-03 (1997) (citing and quoting Section 1983). The United States Court of Appeals for the First Circuit has elaborated on this standard:

> In assessing the imposition of liability under section 1983, we must first ask "(1) whether the conduct complained of was committed by a person acting under the color of state law; and (2) whether this conduct deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States." There are

3

> two aspects to this second inquiry: "(1) there must have been a *deprivation* of federally protected rights, privileges or immunities, and (2) the conduct complained of must have been *causally connected* to the deprivation."

*Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 559 (1st Cir. 1989) (citations omitted) (emphasis in original). The Supreme Court has emphasized that Section 1983 "is not itself a source of substantive rights, 'but merely provides a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (citation omitted).

In his Amended Complaint, Mr. Daggett invokes the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. (ECF No. 8-1, at 58 (Amended Complaint ¶ 1)). However, in describing his claims against Sheriff King and the County,[1] Mr. Daggett does not allege that they infringed any of his rights under the First Amendment. Moreover, Mr. Daggett acknowledged in his interrogatory answers that his Fourth Amendment claim is directed only at "the Berwick Defendants." (ECF No. 48-5, at 423 (Pl's Answers to County Defendants' Interrogatories ¶ 10)). Finally, it is well established that "[t]he Fifth Amendment Due Process Clause...applies 'only to actions of the federal government – not to those of state or local governments.'" *Martinez-Rivera v. Ramos*, 498 F.3d 3, 8 (1st Cir. 2007) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001)) (additional citations omitted). Therefore, despite alleging contrarily in his Amended Complaint, Mr. Daggett has no viable First, Fourth or Fifth Amendment claims against the County Defendants.

Since Mr. Daggett was a pretrial detainee at the time of the events alleged in the Amended Complaint, the Fourteenth Amendment governs his claims based on use of force and provision of medical services. *See Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472-73, 192 L. Ed. 2d 416 (2015); *Gaudreault v. Salem*, 923 F.2d 203, 208 (1st Cir. 1990). To demonstrate a use of force that violates the Due Process Clause, a pretrial detainee must show: one, that the force was purposefully or knowingly used against him or her; and two, that the force was objectively

---

[1] Mr. Daggett is not asserting a claim under Section 1983 against Superintendent Vitiello.

unreasonable based on the particular facts and circumstances and in light of the prison's legitimate security interests. *Id.* at 2472-73 (listing potentially relevant factors). The Supreme Court has emphasized, however, that "'liability for *negligently* inflicted harm is categorically beneath the threshold of constitutional due process.'" *Id.* at 2472 (citation omitted) (emphasis in original).

The requirements for a claim of inadequate medical care under the Fourteenth Amendment have not been "plotted exactly; however, it is clear that they extend at least as far as the protection that the Eighth Amendment gives to a convicted prisoner." *Gaudreault,* 923 F.2d at 208. "Government officials violate the Eighth Amendment if they display 'deliberate indifference' to a prisoner's 'serious medical needs.'" *Miranda-Rivera v. Toledo-Dávila*, 813 F.3d 64, 74 (1st Cir. 2016) (quoting *Gaudreault,* 923 F.2d at 208). "Deliberate indifference requires (1) that 'the official . . . be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' and (2) that he draw that inference." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Moreover, the Supreme Court has emphasized that "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. Finally, as noted above, negligent infliction of harm does not rise to the level of a Fourteenth Amendment violation. *See Kingsley*, 135 S. Ct. at 2472.

### A. The record evidence does not establish any basis for civil rights claims against Sheriff King.

There is no record evidence to suggest that Sheriff King was present for or had any involvement in any of the events alleged in the Amended Complaint. Similarly, the record does not support any civil right claims against Sheriff King based on a theory of supervisory liability.

Based on First Circuit precedent, a claim of "supervisory liability" has two elements. *See Pineda v. Toomey*, 533 F.3d 50, 54 (1st Cir. 2008). First, a plaintiff must show that one of the supervisor's subordinates abridged the plaintiff's constitutional rights. *See id.* Second, a plaintiff

5

must show that "the [supervisor]'s action or inaction was affirmative[ly] link[ed] to that behavior in the sense that it could be characterized as supervisory encouragement, condonation, or acquiescence or gross negligence amounting to deliberate indifference." *Id.* (alterations in original) (quoting *Lipsett v. Univ. of P.R.*, 864 F.2d 881, 902 (1st Cir. 1988)).

A supervisor may not be held liable under section 1983 based solely on *respondeat superior*, nor can a supervisor's section 1983 liability rest exclusively on the supervisor's position of authority. *See Ramírez-Lluveras v. Rivera-Merced*, 759 F.3d 10, 19 (1st Cir. 2014). A supervisor can only be held liable under Section 1983 for the supervisor's own acts or omissions. *See Gutierrez-Rodriguez*, 882 F.2d at 562; *Figueroa v. Aponte-Roque*, 864 F.2d 947, 953 (1st Cir. 1989).

A claim of supervisory liability cannot be premised upon negligent acts. *Ramírez-Lluveras*, 759 F.3d at 19 (citations omitted). Rather, supervisor's conduct must demonstrate "reckless or callous indifference to the constitutional rights of others." *Febus-Rodríguez v. Betancourt-Lebrón*, 14 F.3d 87, 92 (1st Cir. 1994). To show deliberate indifference by a supervisor, a plaintiff must show "(1) 'that the officials had knowledge of facts,' from which (2) 'the official[s] can draw the inference' (3) 'that a substantial risk of serious harm exists.'" *Ramírez-Lluveras*, 759 F.3d at 19 (alteration in original) (quoting *Ruiz-Rosa v. Rullán*, 485 F.3d 150, 157 (1st Cir. 2007)).

Finally, the First Circuit has emphasized that "deliberate indifference alone does not equate with supervisory liability." *Figueroa-Torres v. Toledo-Dávila*, 232 F.3d 270, 279 (1st Cir. 2000) (alteration in original) (quoting *Camilo-Robles v. Hoyos*, 151 F.3d 1, 7 (1st Cir. 1998)). A plaintiff must also show a "solid" causal link between a supervisor's conduct and the constitutional violation. *See Ramírez-Lluveras*, 759 F.3d at 19. The causation requirement "contemplates proof that the supervisor's conduct led inexorably to the constitutional violation." *Hegarty v. Somerset County*, 53 F.3d 1367, 1380 (1st Cir. 1995). "[I]solated instances of unconstitutional activity" will not suffice to establish the necessary causal connection. *Id.*

The summary judgment record does not support any civil rights claims against Sheriff King for several reasons. First, there is no evidence of any constitutional violation by any member of the Jail staff. Mr. Daggett alleges that he hit his head on the wall after the officers lowered him onto a bunk. At best, his testimony suggests that the officers did not correctly assess whether Mr. Daggett would be able to sit upright on the bunk once they released him. Regardless of whether the corrections officers' alleged actions could support a claim of negligence (a point the County Defendants do not concede), they do not constitute objectively unreasonable conduct as a matter of law. *See, e.g., Fernandez-Salicrup v. Figueroa-Sancha*, 790 F.3d 312, 326-27 (1st Cir. 2015) (applying a Fourth Amendment "objectively unreasonable" standard and holding that officer's conduct in shoving a protester face-first against a wall and placing her in handcuffs, while possibly unnecessary, as not unreasonable as a matter of law).

Similarly, the record does not support a claim against any Jail officer with regard to Mr. Daggett's medical care. It is undisputed that a doctor at SMHC had determined Mr. Daggett was fit for incarceration before Officer Poore brought him to the Jail. It is also undisputed that the doctor communicated with the Jail's medical provider – CCS – about Mr. Daggett's medical issues even before Mr. Daggett was admitted to the Jail. Moreover, Mr. Daggett concedes that he had several contacts with the medical providers while at the Jail, that he was provided medication (which, incidentally, was supplied by SMHC) while at the Jail, and that the medical providers were aware of his complaints. There is no evidence that any member of the Jail staff failed to notify the medical provider of complaints by Mr. Daggett, or that they were otherwise deliberately indifferent to any of his complaints. Mr. Daggett's ample access to medical care in the Jail precludes any liability of Jail officers under the Fourteenth Amendment. *Farmer*, 511 U.S. at 844 (holding that reasonable response to known risks preclude liability). Since there is no record evidence to suggest that any of Sheriff King's subordinates violated Mr. Daggett's constitutional rights, he is entitled to summary judgment. *See Pineda*, 533 F.3d at 54.

7

Even if such evidence did exist on this record, there is no evidence of action or inaction on Sheriff King's part that was affirmatively linked to that behavior, in the sense that it could be characterized as supervisory encouragement, condonation, or acquiescence or gross negligence amounting to deliberate indifference. The record demonstrates that Sheriff King was unaware of the events alleged by Mr. Daggett – therefore, Sheriff King could not have drawn the inference that a substantial risk of serious harm existed. Moreover, the record demonstrates no causal link – let alone a "solid" causal link – between Sheriff King's conduct and the alleged constitutional violations. *See Ramírez-Lluveras*, 759 F.3d at 19. At best, Mr. Daggett alleges isolated instances of unconstitutional activity that were unknown to Sheriff King, which will not suffice to establish the required causal connection. *Hegarty*, 53 F.3d at 1380. Sheriff King is entitled to summary judgment with regard to Counts VI and VIII.[2]

### B. The Amended Complaint does not assert a federal civil rights claim against Mr. Vitiello and, in any event, the record would not support such a claim as a matter of law.

Superintendent Vitiello cannot be held liable for any alleged federal civil rights claims because the Amended Complaint does not allege any such claims. Fed. R. Civ. P. 12(b)(6) (dismissal for failure to state a cognizable claim). Nor does the Amended Complaint contain any "factual content that allows the court to draw the reasonable inference that [Superintendent Vitiello] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). As such, to the extent the Amended Complaint can be read to include such claims, the claims should be dismissed.[3]

---

[2] The Maine Law Court has held that the MCRA is patterned on Section 1983. *See Jenness v. Nickerson*, 637 A.2d 1152, 1158 (Me. 1994). Therefore, as this Court has held on several occasions, "[t]he disposition of the federal claim controls the plaintiff's claim under the Maine Civil Rights Act...." *Forbis v. City of Portland*, 270 F. Supp. 2d 57, 61 (D. Me. 2003) (citing *Jenness*, 637 A.2d at 1158 and *Fowles v. Stearns*, 886 F. Supp. 894, 899 n.6 (D. Me. 1995)). For the same reasons that Sheriff King cannot be held liable for the federal civil rights claims, he is entitled to summary judgment on the MCRA in Count VIII.

[3] Since Mr. Daggett has not plead any federal civil rights claims against Superintendent Vitiello, it would seem improbable that he would be included as a defendant in Mr. Daggett's MCRA claim. However, even if the Amended Complaint could be read in that fashion, Superintendent Vitiello is entitled to summary judgment with regard to Count VIII for the reasons discussed below.

In any event, the same arguments presented above in support of summary judgment for Sheriff King would apply to any federal civil rights claims against Superintendent Vitiello. There is no record evidence to suggest that Superintendent Vitiello was involved in any of the events that Mr. Daggett alleges as the basis of his claims. Moreover, Superintendent Vitiello cannot be held liable under a supervisory liability theory. As noted above, there is no record evidence of an underlying violation by Superintendent Vitiello's subordinates. There is also no evidence that Superintendent Vitiello was on notice of any of the issues alleged in the Amended Complaint; therefore, Superintendent Vitiello could not have drawn the inference that a substantial risk of serious harm existed. Finally, there is no evidence of a causal link between action or inaction on the part of Superintendent Vitiello and the alleged constitutional violations. Superintendent Vitiello is entitled to summary judgment with regard to any federal civil rights claims in the Amended Complaint that may apply to him.

### C. Sheriff King and Superintendent Vitiello are protected by qualified immunity.

Even when a plaintiff presents an arguable constitutional violation against a supervisor, the supervisor may nonetheless be protected from liability by qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). As the First Circuit has emphasized, qualified immunity affords officers broad protection even in circumstances in which they may have violated a plaintiff's constitutional rights:

> Thus, the qualified immunity inquiry does not depend on whether the warrantless entry was constitutional, but allows as well for the inevitable reality that "*law enforcement officials will in some cases reasonably but mistakenly conclude* that [their conduct] is [constitutional], and . . . that . . . *those officials* like other officials who act in ways they reasonably believe to be lawful *should not be held personally liable*." [*Anderson* v. *Creighton*, 483 U.S. 635, 641 (1987) (emphasis added)]; [*Burns* v. *Loranger*, 907 F.2d 233, 237 (1st Cir. 1990)]. In other words, qualified immunity sweeps so broadly

9

> that "all but the plainly incompetent or those who knowingly violate the law" are protected from civil rights suits for money damages.

*Hegarty v. Somerset County*, 53 F.3d 1367, 1373 (1st Cir. 1995) (emphasis in original) (citing and quoting *Hunter* v. *Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley* v. *Briggs*, 475 U.S. 335, 341 (1986)).

In applying these standards, there are two relevant inquiries: whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right; and whether that right was "clearly established" at the time of the defendant's alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Generally, the second inquiry itself has two elements: "We ask (a) whether the legal contours of the right in question were sufficiently clear that a reasonable officer would have understood that what he was doing violated the right, and (b) whether in the particular factual context of the case, a reasonable officer would have understood that his conduct violated the right." *Mlodzinski v. Lewis,* 648 F.3d 24, 32-33 (1st Cir. 2011). However, the First Circuit has held that the qualified immunity inquiry "is refined further in supervisory liability cases." *Penate v. Hanchett*, 944 F.3d 358, 366 (1st Cir. 2019). In that context, "[t]he 'clearly established' inquiry … is bifurcated and is satisfied only when '(1) the subordinate's actions violated a clearly established constitutional right, and it was clearly established that a supervisor would be liable for constitutional violations perpetrated by his subordinates in that context.'" *Id.* (quoting *Camilo-Robles*, 151 F.3d at 6). "If the constitutional right and the availability of supervisory liability that underlie a plaintiff's § 1983 claim are both clearly established, … we ask 'whether, in the particular circumstances confronted by [the] appellant, [the] appellant should reasonably have understood that his conduct jeopardized those rights,' whether through deliberate indifference or otherwise." *Id.* (quoting *Camilo-Robles*, 151 F.3d at 7).

Assuming, for the purposes of argument, that Mr. Daggett could demonstrate that his claims implicate clearly-established constitutional rights, he cannot demonstrate that a

supervisor would be liable for constitutional violations committed by Sheriff King and Superintendent Vitiello's subordinates in that context. Neither Sheriff King nor Superintendent Vitiello were aware of the alleged events, there is no record evidence to suggest that either exhibited reckless or callous indifference to the constitutional rights of others, and there is no evidence that their actions led inexorably to the constitutional violations alleged by Mr. Daggett. Therefore, Mr. Daggett cannot establish the existence of a clearly-established right at a supervisory level. In any event, there is no record evidence to suggest that either Sheriff King or Superintendent Vitiello should reasonably have understood that his conduct jeopardized Mr. Daggett's constitutional rights. Therefore, they are both protected by qualified immunity.

### D. Since there is no custom or policy of York County that caused the constitutional harm alleged by Mr. Daggett, the County cannot be held liable under Section 1983.

Governmental entity liability under Section 1983 can be assessed only "where the municipality *itself* causes the constitutional violation at issue. *Respondeat superior* or vicarious liability will not attach under § 1983." *City of Canton, Ohio v. Harris,* 489 U.S. 378, 385 (1989). The Supreme Court has required a plaintiff to demonstrate that a policy or custom of the governmental entity led to the constitutional deprivation alleged. *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 694 (1978). The plaintiff must show both the existence of a policy or custom and a causal link between that policy and the constitutional harm. *See, e.g., City of Canton,* 489 U.S. at 387-90; *Oklahoma City v. Tuttle,* 471 U.S. 808, 823 (1985). Moreover, the policy or custom must be the result of acts or omissions of the municipality's policymakers that exhibit "deliberate indifference" to the rights of the municipality's inhabitants. *City of Canton*, 489 U.S. at 387-90; *Gaudreault*, 923 F.2d at 209.

The County has policies pertaining to the use of control and to the provision of medical services to inmates and detainees. It is the policy of York County to confine the use of control measures at the Jail to situations in which the use of physical force is necessary to: protect an officer from assault or threat of assault; protect another person from assault or threat of assault;

protect an inmate from harm; or to prevent the destruction of property. (Vitiello Aff. Exh. 1). Moreover, Jail officers are instructed to limit the degree of control to what the officer perceives as reasonable and necessary under the circumstances. *Id.* Further, it is the policy of York County to afford inmates and detainees at the Jail reasonable access to non-emergencyMarch 26, 2020 medical services. (Vitiello Aff. Exh. 2, at YC000061). With regard to the actual provision of medical services, it is the policy of York County for employees working at the Jail to defer to the medical provider – which was, in May of 2015, CCS – with regard to decisions pertaining to health care diagnosis and treatment of inmates.

Mr. Daggett has not identified any custom or policy of York County that would contradict these established policies. Moreover, he has not identified how any York County custom or policy was the moving force behind the alleged violations of his constitutional rights. In his deposition testimony, Mr. Daggett disclaimed any knowledge of County policies or customs and was unaware of any connection between County policies or customs and the events he alleges violated his constitutional rights. (ECF No. 48-3, at 406-07 (Daggett Dep. III at 20/18 to 21/1)). Similarly, Mr. Daggett's interrogatory answers contained conclusory and speculative statements, but no facts to suggest the existence of a County policy that was the cause of the alleged constitutional violations. (ECF No. 48-5, at 424-25 (Pl's Resp. to County Defs' Interrog. ¶ 15)). Therefore, the County is entitled to summary judgment on Count VII.

### E. The summary judgment record does not support the existence of several required elements of a conspiracy claim pursuant to 42 U.S.C. § 1985.

The First Circuit has held that "[t]o state a claim under § 1985(3) a plaintiff must allege the existence of (1) a conspiracy, (2) a conspiratorial purpose to deprive a person or class of persons, directly or indirectly, of the equal protection of the laws or of equal privileges and immunities under the laws, (3) an overt act in furtherance of the conspiracy, and (4) either (a) an injury to person or property, or (b) a deprivation of a constitutionally protected right or privilege." *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996) (citing *Griffin v. Breckenridge*, 403

U.S. 88, 102 (1971)). The Supreme Court effectively added a fifth requirement to this test when it construed Section 1985's references to "equal protection" and "equal privileges and immunities under the laws" to signify that a plaintiff may recover only when the alleged conspiratorial conduct is motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Griffin*, 403 U.S. at 102.

Since Mr. Daggett cannot demonstrate any of the first three elements described in *Aulson* or any racial or class-based animus, his federal conspiracy claim fails as a matter of law. In his interrogatory responses, Mr. Daggett suggested that the facts supporting his conspiracy claim were contained in his allegations against each of the County Defendants. (ECF No. 48-5, at 424 (Pl's Resp. to County Defs' Interrog. ¶ 14)). However, those interrogatory responses do not contain any facts pertaining to: the existence of a conspiracy against Mr. Daggett; a conspiratorial purpose to deprive Mr. Daggett of the equal protection of the laws or of equal privileges and immunities under the laws; or an overt act in furtherance of the conspiracy.[4] (ECF No. 48-5, at 420-24 (Pl's Resp. to County Defs' Interrog. ¶¶ 6-13)). Moreover, those interrogatory responses do not allege that any alleged conspiratorial conduct was motivated by racial or class-based, invidiously discriminatory animus. *Id*. Therefore, the County Defendants are entitled to summary judgment on Count I.

## II. THE PLAINTIFF DOES NOT PRESENT AN ACTIONABLE CIVIL CONSPIRACY CLAIM AND, IN ANY EVENT, THE COUNTY DEFENDANTS ARE PROTECTED BY IMMUNITY.

The only tort claim Mr. Daggett has asserted against the County Defendants is a claim of civil conspiracy in Count IX. For the reasons discussed below, the County Defendants are entitled to summary judgment with regard to that claim.

---

[4] As argued above, there is also no evidence of a deprivation of a constitutionally protected right or privilege, which is also a required element of a conspiracy under Section 1985.

### A. The Plaintiff has neither alleged nor demonstrated the elements necessary for a claim of civil conspiracy.

The Maine Law Court has consistently held that civil conspiracy is not an independent cause of action. "[A]bsent the actual commission of some independently recognized tort, a claim for civil liability for conspiracy fails." *Potter, Prescott, Jamieson & Nelson, P.A. v. Campbell*, 1998 ME 70, ¶ 8, 708 A.2d 283 (citing *Cohen v. Bowdoin*, 288 A.2d 106 (Me. 1972)). *See also Forbis v. City of Portland*, 270 F. Supp.2d 57, 61 (D. Me. 2003) (construing Maine law and noting that "[i]n Maine, there is no separate cause of action for civil conspiracy; it is only a way of obtaining vicarious liability against someone who did not himself perform the tortious act"). Mr. Daggett has not even alleged – let alone demonstrated – that the County Defendants committed an independent tort recognized under Maine law. Therefore, the County Defendants are entitled to summary judgment on County IX.

### B. The Plaintiff's civil conspiracy claim is barred by the Maine Tort Claims Act's statute of limitations.

The Maine Tort Claims Act, 14 M.R.S. §§ 8101-8118 ("the Act") provides a general grant of tort immunity to governmental entities: "all governmental entities shall be immune from suit on any and all tort claims seeking recovery of damages." § 8103(1). By definition, governmental entities include counties. § 8102(2 & 3) ("governmental entity" defined to include "political subdivisions" of the State, including counties). Any claims alleging torts against governmental entities or their employees must be brought within two years of accrual. 14 M.R.S. § 8110. "A tort claim accrues when 'the plaintiff sustains harm to a protected interest.'" *McLaughlin v. Superintending Sch. Comm.*, 2003 ME 114, ¶ 22, 832 A.2d 782 (quoting *Johnston v. Dow & Coulombe Inc.*, 686 A.2d 1064, 1066 (Me. 1996) (internal quotation marks omitted)).

Mr. Daggett's civil conspiracy claim is time-barred. Mr. Daggett alleges that he was harmed by a civil conspiracy that occurred on May 17-18, 2015. Therefore, pursuant to Section 8110, he was required to file his claim no later than May 18, 2017. Since his Complaint in this

14

matter was not filed until August 8, 2018, Mr. Daggett's civil conspiracy claim is barred by the applicable statute of limitations.

### C. Sheriff King and Superintendent Vitiello are protected by discretionary function immunity.

Even if civil conspiracy was a viable separate cause of action, Mr. Vitiello and Sheriff King would be protected from liability by discretionary function immunity under the Act. 14 M.R.S. § 8111. The Act confers upon governmental employees absolute discretionary function immunity. § 8111(1)(C); *Carroll v. City of Portland*, 1999 ME 131, ¶ 6, 736 A.2d 279 (emphasizing that that discretionary function immunity is absolute). Moreover, "discretionary immunity…applies unless the defendants' conduct 'clearly exceeded, as a matter of law, the scope of any discretion [they] could have possessed in [their] official capacity as [police officers].'" *Polley v. Atwell*, 581 A.2d 410, 414 (Me. 1990) (emphasis in original). The Maine Law Court has held that "[t]he management and care of prisoners is a discretionary function." *Erskine v. Comm'r of Corr.*, 682 A.2d 681, 686 (Me. 1996) (citing *Ellis v. Meade*, 887 F. Supp. 324, 331 (D. Me. 1995)). In fact, the Law Court has emphasized that "[s]uch 'is at the core of the discretionary function immunity.'" *Id.* (quoting *Darling v. Augusta Mental Health Inst.*, 535 A.2d 421, 426 (Me. 1987)). Similarly, the Law Court has held that "[t]he supervision of governmental employees conducting discretionary functions is a discretionary act." *Chiu v. City of Portland*, 2002 ME 8, ¶ 25, 788 A.2d 183 (citing *Miller v. Szelenyi*, 546 A.2d 1013, 1021 (Me. 1988)).

Based on *Erskine* and *Chiu*, there can be no doubt that discretionary function immunity pertains to Mr. Daggett's tort claim against the individual County Defendants. Moreover, there is no evidence of either individual County Defendant clearly exceeding his authority as a law enforcement officer with regard to Mr. Daggett's brief incarceration at the Jail. Therefore, Sheriff King and Superintendent Vitiello are absolutely immune from liability for Mr. Daggett's civil conspiracy claim.

### D. The County is protected from liability by absolute immunity.

Absent an express exception, York County is absolutely immune from liability for tort claims. § 8103(1); *Lightfoot v. Sch. Admin. Dist. No. 35*, 2003 ME 24, ¶ 7, 816 A.2d 63. There is no statutory exception to immunity that applies to Mr. Daggett's claims. *Cf.* 14 M.R.S. § 8104-A; *see also Lightfoot*, 2003 ME 24, ¶ 7 (noting that the "public buildings" exception to immunity does not apply to a governmental entity's care or supervision of people in its charge) (quoting *ABT & A Co. v. State*, 644 A.2d 460, 460 (Me. 1994)). Even if an exception did apply, the County would nonetheless be protected by discretionary function immunity. *See* 14 M.R.S. § 8104-B(3); *see also Erskine*, 682 A.2d at 686; *Chiu*, 2002 ME 8, ¶ 25.

Finally, the County has not waived its immunity protection through the purchase of insurance. The Act provides that a governmental entity can waive its immunity by procuring insurance that "provides coverage in areas where the governmental entity is immune…." 14 M.R.S. § 8116. However, during the period implicated by Mr. Daggett's allegations, the only liability insurance procured by the County that covered the Jail was obtained through the Maine County Commissioners' Association Self-Funded Risk Management Pool ("Risk Pool"). The coverage through the Risk Pool provided explicitly that it was limited to "those areas for which governmental immunity has been expressly waived." The Law Court has held that such limiting language precludes a waiver of immunity under Section 8116. *See Doucette v. City of Lewiston*, 1997 ME 157, ¶ 8, 697 A.2d 1292 (holding that MMA policy that limited coverage "to those areas for which governmental immunity has been expressly waived" did not waive immunity under Section 8116). Since the Plaintiffs' claims do not implicate an area in which immunity has been expressly waived, the Risk Pool coverage does not apply. Therefore, the County has not waived its immunity under the Act by purchasing insurance and it is entitled to summary judgment on Mr. Daggett's tort claim.

### III.     THE PLAINTIFF HAS NOT ALLEGED CLAIMS AGAINST THE COUNTY DEFENDANTS THAT COULD RESULT IN AN AWARD OF PUNITIVE DAMAGES.

Mr. Daggett seeks punitive damages with regard to his federal civil rights claims and his state law claim of civil conspiracy. However, punitive damages are not recoverable against the County under state tort law or under Section 1983. *See* 14 M.R.S. § 8105(5); *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271 (1981). Therefore, the Court should enter summary judgment in favor of York County with regard to punitive damages.

Sheriff King and Superintendent Vitiello are also entitled to summary judgment with regard to Mr. Daggett's request for punitive damages. Punitive damages against an individual in a Section 1983 action are available only "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to federally protected rights of others." *Smith v. Wade,* 461 U.S. 30, 56 (1983). Similarly, punitive damages under Maine law may be awarded only if the plaintiff can show either ill will or outrageous conduct. *See Tuttle v. Raymond*, 494 A.2d 1353 (1985). Mere negligence or reckless disregard of the circumstances are not enough to justify punitive damages. *Id.* at 1362-63. As discussed at length above, the summary judgment record demonstrates that neither Sheriff King nor Superintendent Vitiello was motivated by evil motive or intent, nor did they act with reckless or callous indifference to Mr. Daggett's federally-protected rights. Therefore, Mr. Daggett cannot present a triable issue of punitive damages against them.

## CONCLUSION

For the reasons discussed above, the County Defendants request that the Court enter summary judgment in their favor with regard to all claims against them in the Amended Complaint.

Dated at Portland, Maine this 22nd day of April, 2020.

|  |  |
|---|---|
|  | Attorneys for Defendants York County, William King and Michael Vitiello<br>MONAGHAN LEAHY, LLP<br>95 Exchange Street, P.O. Box 7046<br>Portland, ME 04112-7046<br>(207) 774-3906<br>jwall@monaghanleahy.com |
| BY: | /s/ John J. Wall, III<br>John J. Wall, III |

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 22, 2020, I electronically filed **County Defendants' Motion for Summary Judgment, with Incorporated Memorandum of Law** using the CM/ECF system, which will provide notice to me and the following other counsel of record: schurchill@nicholschurchill.com; rhatch@thompsonbowie.com; bwahrer@thompsonbowie.com; ebenjamin@dwmlaw.com; kpark@dwmlaw.com.

Dated at Portland, Maine this 22nd day of April, 2020.

|  |  |
|---|---|
|  | Attorneys for Defendants York County, William King and Michael Vitiello<br>MONAGHAN LEAHY, LLP<br>95 Exchange Street, P.O. Box 7046<br>Portland, ME 04112-7046<br>(207) 774-3906<br>jwall@monaghanleahy.com |
| BY: | /s/ John J. Wall, III<br>John J. Wall, III |